O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TAMMY L. KOLODZIEJ, ) | Case No. CV 08-08099 (MLG) |
|         Plaintiff, ) | MEMORANDUM OPINION AND ORDER |
|     v. ) | |
| MICHAEL J. ASTRUE, )<br>Commissioner of the )<br>Social Security )<br>Administration, ) | |
|         Defendant. ) | |

    Plaintiff Tammy L. Kolodziej ("Plaintiff") seeks review of the Commissioner's final decision denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income ("SSI"). For the reasons stated below, the Commissioner's decision should be affirmed and this action should be dismissed with prejudice.

**I.   Factual and Procedural Background**

    Plaintiff was born on June 12, 1959. (Administrative Record ("AR") at 30, 41). She has past relevant work experience as a medical assistant. (AR at 30, 45). Plaintiff has a high school education and

vocational training as a medical assistant and pharmacy technician. (AR at 30, 45).

Plaintiff filed applications for DIB and SSI on October 24, 2005, alleging that she has been disabled and unable to work since August 8, 2003, due to degenerative disc disease of the spine, instability and numbness in the left leg, pain in the neck, shoulders, and arms, and depression. (AR at 95, 123). Plaintiff's applications were denied initially and upon reconsideration.  (AR 54-58, 61-65).

On February 6, 2008, an administrative hearing was held before Administrative Law Judge Kevin M. McCormick ("the ALJ"). (AR at 33-51). On April 8, 2008, the ALJ issued a decision finding that Plaintiff was not disabled. (AR at 19-32). Specifically, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date, and suffers from a combination of impairments, including status post lumbar fusion at L4-5 and L5-S1 due to degenerative disc disease, post laminectomy syndrome, degenerative disc disease of the cervical spine, obesity, and depressive disorder (not otherwise specified). (AR at 22). The ALJ found that Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (AR at 24). The ALJ assessed Plaintiff with the residual functional capacity to perform above a range of sedentary work.[1] (AR at 24). The ALJ concluded that Plaintiff was no longer able to perform her past relevant work, but was able to perform other work that

---

[1] Specifically, the ALJ found that Plaintiff was capable of: lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; standing and/or walking two hours in an eight-hour workday; sitting six hours in an eight-hour workday; balancing frequently; and climbing, kneeling, crouching, and crawling occasionally. (AR at 24). Plaintiff is not able to stoop and needs to avoid exposure to moving machinery. (AR at 24).

exists in significant numbers in the economy, such as: Preparer, Jewelry and Silver Industry; Patcher, House Appliance Industry; and Final Assembler, Optical Goods Industry. (AR at 31).

On October 30, 2008, the Appeals Council denied review. (AR at 5-7). Plaintiff then commenced this action for judicial review.

The parties filed a Joint Stipulation of disputed issues on August 12, 2009. Plaintiff contends that the ALJ failed to articulate sufficient reasons for rejecting Plaintiff's disability claim sand Plaintiff's subjective symptom testimony. (Joint Stipulation at 4-18, 24-26). Plaintiff seeks remand for payment of benefits or, in the alternative, remand for further administrative proceedings. (Joint Stipulation at 26). The Commissioner requests that the ALJ's decision be affirmed. (AR at 27). The Joint Stipulation has been taken under submission without oral argument.

## II.  **Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's decision should be upheld if it is free from legal error and supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence means "more than a mere scintilla," *Richardson*, 402 U.S. at 402, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n.10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both

the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick*, 157 F.3d at 720. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-721.

### III. Discussion

#### A. Periods of Disability

Plaintiff was diagnosed with degenerative disc disease of the lumbar spine (L5-S1) in May 2000, but she was able to continue working. (AR at 87, 293). She received infrequent and conservative treatment for her condition. (AR at 87, 24, 268, 290, 301, 306). Plaintiff stopped working in April 2002 for non-medical reasons. (AR at 87, 92, 95).

Plaintiff alleged that she became disabled on August 8, 2003. (AR at 322). Between January and March 2004, Plaintiff received three epidural steroid injections at L5-S1, which provided moderate pain relief. (AR at 254, 257, 259). By July 2004, however, Plaintiff was having great difficulty walking and complained of an average daily pain level of "10/10." (AR at 248). Plaintiff underwent back surgery (fusion with instrumentation) on August 26, 2004. (AR at 223-24). Two weeks after the surgery, Plaintiff reported that her pain had significantly improved. (AR at 214). Plaintiff's treating physician, Langston Holly, M.D., noted that from a neurological standpoint, Plaintiff had "5/5 strength throughout," and her sensation was intact. (AR at 214). On October 31, 2004, Plaintiff fell while walking, which caused some pain on the right side. (AR at 206). Prior to that time, her pain had nearly been eliminated. (AR at 206). Plaintiff's x-rays showed no significant changes and neurologically, Plaintiff's strength and sensation were

normal. (AR at 206). Dr. Holly opined that Plaintiff incurred only a soft tissue injury from her fall. (AR at 206). Films of Plaintiff's lumbar spine taken in February 2005, showed that Plaintiff's graft and instrumentation were still in position, but the lumbar fusion was not yet complete. (AR at 206). About a year after surgery, on August 19, 2005, Dr. Holly reported that Plaintiff's fusion was solid, her strength was "5/5," and her sensation was intact, except for some numbness along the left thigh. (AR at 204). While Plaintiff continued to have some pain, Dr. Holly believed it was myofascial in origin. (AR at 204). Dr. Holly prescribed physical therapy and hydrotherapy and ordered a one-year follow up visit. (AR at 203-04). Despite this positive report, Dr. Holly also wrote a brief letter opining that Plaintiff was not able to work. The letter, which was addressed to "To Whom It May Concern," stated that Plaintiff was "unable to work as she is still recovering from her surgery" and would continue to be unable to work for one more year. (AR at 202).

In November 2005, an MRI of Plaintiff's cervical spine revealed straightening of the lordotic curve, severe right neural foraminal narrowing at C5-6, moderate findings in the left neural foramen at C5-6, and mild changes at C4-5. (AR at 201). In January 2006, while cleaning floors, Plaintiff experienced pain in her neck that radiated down her left arm. (AR at 198). Dr. Holly prescribed physical therapy and medication. (AR at 198-99). Surgery was not indicated. (AR at 198).

On March 20, 2006, Dr. Holly completed a Medical Source Statement indicating that Plaintiff was capable of working. (AR at 180-81). Specifically, Dr. Holly opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk two hours a day, sit for six hours a day, occasionally climb, kneel, crouch, and

crawl, but should never stoop. (AR at 180-81).

Plaintiff continued to receive conservative treatment for her ongoing complaints of neck pain. (AR at 192, 196-97, 235-36, 238, 240-44, 246). In April 2006, Dr. Holly prescribed physical therapy. (AR at 197). In August 2006, Plaintiff was referred to pain management for evaluation. (AR at 192). In December 2006, Plaintiff was prescribed medication and a series of epidural steroid injections. (AR at 240-44, 247). In April 2007, Plaintiff underwent a median branch nerve block at C3-C7, which provided significant pain relief. (AR at 236).

Plaintiff contends that the ALJ should have considered her claim as three discrete periods of disability. (Joint Stipulation at 8). The first period pertains to the pre-surgical and the post-surgical recuperative period, and extends from Plaintiff's alleged onset date of August 8, 2003 through August 2005. (Joint Stipulation at 8). The second period, during which Plaintiff underwent physical therapy for her neck and back, extends from August 2005 through July 2007. (Joint Stipulation at 9). The third period, during which Plaintiff received treatment for her neck condition and ongoing back problems, overlaps with the second period and extends from February 2006 through the date of the ALJ's decision. (Joint Stipulation at 9). Plaintiff asserts that the ALJ erred by failing to articulate sufficient reasons for rejecting the "[d]iffering [p]eriods of [d]isability." (Joint Stipulation at 4). The Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled.

**1. Pre-Surgical and Post-Surgical Period and Dr. Holly's Opinion of Disability**

In finding Plaintiff not disabled during the purported Pre-Surgical and Post-Surgical Period (August 8, 2003 through August 2005), the ALJ

thoroughly considered the medical evidence. For example, the ALJ noted that there was no evidence of radiculopathy or other neurological deficits before or after Plaintiff's August 2004 surgery. (AR at 22, 26). Dr. Holly's post-surgical examinations of Plaintiff in December 2004, February 2005, and August 2005 showed significant improvement in her back pain. (AR at 22). The ALJ also noted that Plaintiff received only conservative treatment for her back condition after surgery, including physical therapy, hydrotherapy, and infrequent visits to Dr. Holly. (AR at 26). While Plaintiff's fusion was not solid until August 2005, Dr. Holly suspected that Plaintiff's continued smoking, which had violated post-operative instructions, caused the delay in recovery. (AR at 205). The ALJ's interpretation of the medical evidence was rational. Even if Plaintiff's interpretation of the medical evidence conflicts with the ALJ's conclusion, it was within the province of the ALJ to weigh the evidence presented and resolve material conflicts therein. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion").

Next, Plaintiff contends that the ALJ improperly rejected Dr. Holly's opinion that Plaintiff was disabled. (Joint Stipulation at 9). As noted above, in August 2005, Dr. Holly wrote a brief letter stating that Plaintiff was unable to work due to her recovery from surgery and that her disability would continue for one more year. (AR at 202). Contrary to Plaintiff's assertions, the ALJ provided clear and convincing and specific and legitimate reasons for rejecting Dr. Holly's opinion of disability. *Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir. 1987) (explaining that ALJ may not reject a treating physician's opinion

7

unless he makes findings setting forth "specific, legitimate reasons" for rejecting it "that are based upon substantial evidence in the record"); *Rodriguez v. Brown*, 876 F.2d 759, 761-62 (9th Cir. 1989) (requiring the ALJ to provide clear and convincing reasons to reject a treating doctor's opinions that are uncontroverted). First, the ALJ found that Dr. Holly's opinion on the ultimate issue of disability contradicted his observations and findings with respect to the Plaintiff's specific limitations. (AR at 29); *see Matney v. Sullivan*, 981 F.2d 1016, 1019-20 (9th Cir. 1992) (explaining that the ALJ is not required to accept a treating physician's opinion "if it is conclusory and brief and is unsupported by clinical findings"). As discussed earlier, Dr. Holly's notes reflect normal neurological examinations and significant improvement in Plaintiff's back pain after her August 2004 back surgery. (AR at 29). Second, it was unclear whether Dr. Holly was referring solely to an inability to perform Plaintiff's past work as a medical assistant or to all work in general. (AR at 29). It was in the discretion of the ALJ to interpret the statement and resolve the ambiguity. *Morgan v. Commissioner of Social Security*, 169 F.3d 595, 603 (9th Cir. 1999). Finally, even if Dr. Holly had been referring to disability as defined under the Act, such a conclusory opinion was not determinative of disability in this case. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Accordingly, the ALJ's assessment of Dr. Holly's opinion was supported by substantial evidence.

**2.   The Physical Therapy Period and the Neck Period**

Plaintiff's medical records during the Physical Therapy Period (August 2005 through July 2007) and the Neck Period (February 2006 through April 2008) also failed to establish disability. Notably, the Medical Source Statement completed by Dr. Holly in March 2006

demonstrates that Plaintiff was able to work. (AR at 26, 180-81). No other physicians contradicted that opinion. (AR at 26). While Plaintiff complained of ongoing neck pain, her doctors prescribed only conservative treatment, including physical therapy, medication, epidural steroid shots, and a nerve block. (AR at 26, 235-36, 238, 240-42). Plaintiff was seen on an as needed basis, and surgical intervention was not recommended. (AR at 192, 197-98). It does not appear that Plaintiff received any treatment for her neck pain after mid-2007. (AR at 27). With respect to Plaintiff's back condition, the record shows that Plaintiff received minimal, if any treatment during the Physical Therapy Period and the Neck Period. (AR at 192, 238, 247). In December 2006, Plaintiff described her back pain as "5/10." (AR at 246). X-rays of Plaintiff's lumbar spine consistently showed Plaintiff's spinal alignment to be stable and her surgical hardware to be intact. (AR at 194, 196). Thus, the medical evidence is consistent with the ALJ's conclusion that Plaintiff was not disabled, and the Court defers to the ALJ's decision. *Andrews,* 53 F.3d at 1039; *Batson*, 359 F.3d at 1198.

**B.   Plaintiff's Subjective Pain Testimony**

Plaintiff contends that the ALJ erred by discounting her subjective symptom testimony. (Joint Stipulation at 13-18). Specifically, Plaintiff contends that she is unable to sit for prolonged periods, and has difficulty using her neck to flex, rotate and maintain a fixed position. (Joint Stipulation at 13, 17; AR at 107, 110, 123).

The determination of credibility and the resolution of conflicts in the testimony are functions of the ALJ acting on behalf of the Commissioner. *Morgan*, 169 F.3d at 599. In general, an ALJ's assessment of credibility should be given great weight. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). However, once a claimant has presented medical

evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony regarding subjective pain and other symptoms merely because the symptoms, as opposed to the impairments, are unsupported by objective medical evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "'[T]he ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281.

Here, the ALJ determined that Plaintiff's medically determinable impairments could have reasonably been expected to produce some of Plaintiff's reported symptoms, but that the intensity, persistence and limiting effects of those symptoms were not credible to the extent alleged. (AR at 26). In support of his adverse credibility determination, the ALJ cited inconsistent statements in Plaintiff's testimony. (AR at 27); *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (explaining that the ALJ may employ ordinary techniques of credibility evaluation and may take into account prior inconsistent statements or a lack of candor by the witness). For example, in three different disability reports, Plaintiff consistently denied experiencing side-effects from her medications. (AR at 99, 125, 149). At the hearing, however, Plaintiff began claiming that her medications caused drowsiness and lethargy even though there had been no significant change in her medications since the filing of her last disability report. (AR at 36-37, 149); *see Fair*, 885 F.2d at 604 n.5; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Plaintiff's subjective complaints were also inconsistent with her acknowledged daily activities, which included

preparing meals, some household cleaning, driving, shopping, performing craft activities, attending social functions, and paying bills. (AR at 27, 106-112); *Light*, 119 F.3d at 792 (inconsistencies between testimony and conduct may be considered in weighing a claimant's credibility).

The ALJ also properly considered Plaintiff's failure to comply with Dr. Holly's recommendation that she refrain from smoking after surgery. (AR at 27); *see Fair*, 885 F.2d at 603 (holding that non-compliance with prescribed treatment is proper evidence relating to the credibility of the patient).

Finally, as discussed above, the objective medical evidence does not support the allegations of disabling pain and other limitations. (AR at 26). While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. 20 C.F.R. §§ 404.1629(c)(2), 416.929(c)(2).

Given the ALJ's clear and convincing reasons for discounting Plaintiff's subjective symptom testimony, substantial evidence supports the ALJ's credibility finding. Therefore, relief is not warranted.

**IV. Conclusion**

The decision of the Commissioner is supported by substantial evidence and the proper legal standards were applied. Accordingly, the decision of the Commissioner is **AFFIRMED**.

Dated: September 23, 2009

_____
Marc L. Goldman
United States Magistrate Judge